Filed 11/23/15  Gehron v. Bank of America CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| GEORGE GEHRON et al., | |
| Plaintiffs and Appellants, | E060701 |
| v. | (Super.Ct.No. INC1302638) |
| BANK OF AMERICA, N.A., for itself and as Successor in Interest, etc. et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  David M. Chapman,

Judge.  Affirmed.

Bret D. Lewis for Plaintiffs and Appellants.

Reed Smith, David S. Reidy, Matthew J. Brady, Myles A. Lanzone and Michael E.

Gerst, for Defendants and Respondents.

After plaintiffs and appellants George Gehron, Cheryl Gehron, and Gehron

Express Family Trust defaulted on a home mortgage, foreclosure proceedings were

instituted and the property was sold at a trustee's sale.  Subsequently, plaintiffs filed suit

1

against the foreclosing entities, the parties to the original loan transactions, and the parties to the subsequent foreclosure sale; the operative first amended complaint (FAC) asserts 18 causes of action. The trial court sustained defendants' demurrer to the FAC without leave to amend.[1] In this appeal, plaintiffs contend that the first 14 of their causes of action are adequate to survive demurrer.[2] We affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

In May 2007, plaintiffs executed a promissory note in the amount of $370,500, secured by a deed of trust, to purchase a second home. Shortly thereafter, the loan was pooled with other loans in a securitized investment trust. In 2009, foreclosure proceedings were instituted, with a notice of default and election to sell recorded on March 12, 2009. The property was eventually sold at a trustee's sale held on September 4, 2012.

Plaintiffs brought suit on April 24, 2013. The FAC was filed on August 22, 2013. The FAC purports to assert 18 causes of action, which may be grouped into 11 types of

---

[1] The February 20, 2014 judgment from which plaintiffs appealed does not mention several of the defendants. After requesting and receiving briefing on the issue, on May 2, 2014, we ordered that this appeal would proceed only as to those defendants against whom an appealable judgment had been entered, namely, Bank of America, N.A., for itself and as successor in interest etc., Merrill Lynch Mortgage Investors, Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., U.S. Bank, N.A. as successor trustee, etc., First Franklin Financial Corporation, and Mortgage Electronic Registration Systems, Inc. The parties who were defendants below but are not respondents in the present appeal are Barry J. Nicholas, Aliso Pacific Realty Advisors, Barry Fast and T.D. Service Company. Except where specifically noted, in this opinion we use the term "defendants" to refer to those defendants who are also respondents.

[2] Plaintiffs' fifteenth, sixteenth, seventeenth, and eighteenth causes of action were asserted only against defendants who are not party to this appeal.

2

claims: (1) wrongful foreclosure (first cause of action); (2) quiet title (second cause of action); (3) declaratory relief (third cause of action); (4) cancellation of instruments (fourth cause of action); (5) unfair, unlawful and fraudulent business practices (fifth through ninth causes of action); (6) fraud-concealment (tenth cause of action); (7) breach of the covenant of good faith and fair dealing (eleventh cause of action); (8) conversion (twelfth, fifteenth and sixteenth causes of action); (9) trespass to chattels (thirteenth and seventeenth causes of action); (10) money had and received (fourteenth cause of action); and (11) trespass (eighteenth cause of action).

Defendants filed their demurrer to the FAC on September 26, 2013.[3] In a minute order issued on December 23, 2013, as amended nunc pro tunc on January 14, 2014, the trial court sustained the demurrer without leave to amend. The trial court entered judgment on February 20, 2014.

## II. DISCUSSION

### A. Standard of Review

"'On review of an order sustaining a demurrer without leave to amend, our standard of review is de novo, "i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law." [Citation.]' [Citation.] ""We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.]"' [Citation.] 'We affirm if any ground offered in

_____

[3] The defendants who are not parties to this appeal also separately filed their own demurrers.

3

support of the demurrer was well taken but find error if the plaintiff has stated a cause of action under any possible legal theory. [Citations.] We are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale. [Citation.]' [Citation.]" (*Walgreen Co. v. City and County of San Francisco* (2010) 185 Cal.App.4th 424, 433.)

## B. Analysis

### 1. Plaintiffs Lack Standing to Bring Claims Based on Purported Defects in Assignments of Mortgage.

Many of plaintiffs' causes of action—arguably, all of the causes of action at issue in the present appeal, but plaintiffs concede the point with respect to the first five—are grounded in purported flaws in the chain of title to the note and deed of trust, which plaintiffs argue render the assignments void, so the parties who foreclosed on their property were without authority to do so. We find that plaintiffs lack standing to raise this argument.

The great weight of California authority rejects the notion that a borrower in default on a loan has standing to attack a purportedly void assignment of a note or deed of trust to which it is not a party as a means of challenging the foreclosure process. In arguing otherwise, plaintiffs rely virtually entirely on *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079 (*Glaski*). In that case, the court determined that the borrower had standing to attack a void assignment to which it was not a party. (*Id.* at p. 1095.)

We doubt, however, that *Glaski* was correctly decided. (See *People v. Gipson* (2013) 213 Cal.App.4th 1523, 1529 ["It is true that we typically follow the decisions of

4

other appellate districts or divisions, but only if we lack good reason to disagree."].)

Among other defects in its reasoning, the *Glaski* court relies on federal case law interpreting the law of other jurisdictions. (*Glaski*, *supra*, 218 Cal.App.4th at pp. 1094-1095.) California cases other than *Glaski* have consistently held that a borrower lacks standing to attack a purportedly invalid assignment of their mortgage absent a showing of prejudice. (E.g., *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 85-86.) And prejudice rarely, if ever, can be shown in such cases, because the borrower's obligations under the promissory note remain unchanged, regardless of who holds the present beneficial interest. (See *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 515 (*Jenkins*) [finding that even assuming the transfers of the promissory note were invalid, the borrower is not the "victim" because her obligations remained unchanged].) We are not aware of any California case that has followed *Glaski* on the issue of a borrower's right to challenge a foreclosure based on an allegedly improper assignment. We will not be the first.[4]

---

[4] The California Supreme Court has granted review of several cases in which the court of appeal had rejected *Glaski*—the lead case is *Yvanova v. New Century Mortgage Corp.* (2014) 226 Cal.App.4th 495, review granted August 27, 2014, S218973. Unless and until the Supreme Court requires us to do otherwise, however, we will follow what we view to be the better reasoned authority of cases that reject the *Glaski* court's reasoning.

5

Plaintiffs' only articulated arguments as to why their first through fifth causes of action state a claim rest on *Glaski*. We reject *Glaski*, and conclude that those causes of action fail to state a claim.[5]

2. *Plaintiffs Lack Standing to Bring Unfair Competition Claims Under Proposition 64.*

Plaintiffs' fifth through ninth causes of action purport to assert claims under Business & Professions Code, § 17200 et seq., commonly referred to as the unfair competition law (UCL). (See *Jenkins*, *supra*, 216 Cal.App.4th at p. 520.) Even if we were to assume, however, that plaintiffs have alleged facts indicating defendants' alleged actions violated at least one of the UCL's unfair competition prongs (they have not), plaintiffs could not show a causal link between the purported violations and any economic injury they may have suffered. As such, plaintiffs lack standing to assert a claim under the UCL.

"Under the UCL, any person or entity that has engaged, is engaging or threatens to engage 'in unfair competition may be enjoined in any court of competent jurisdiction.' [Citations.] 'Unfair competition' includes 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.'" (*Jenkins*, *supra*, 216 Cal.App.4th at p. 520.) However, under the UCL as amended by Proposition 64, private standing to bring a UCL action is restricted to "a person who has *suffered injury*

---

[5] Plaintiffs' lack of standing to challenge purported flaws in the chain of assignments is hardly the only fatal flaw in these claims. In light of our conclusion regarding *Glaski*, however, we need not discuss those additional issues.

6

*in fact* and has *lost money or property* as a *result* of the unfair competition." (Bus. & Prof. Code, § 17204, italics added, as amended by Prop. 64, § 3, as approved by voters, Gen. Elec. (Nov. 2, 2004).)

The foreclosure of plaintiffs' property suffices to establish an injury in fact in the meaning of the UCL—the alleged loss of a property interest is sufficient to establish an economic injury for pleading purposes under the UCL. (*Jenkins*, *supra*, 216 Cal.App.4th at p. 522.) Nevertheless, plaintiffs have not established and cannot establish a causal link between that injury in fact and any purported unlawful, unfair, and/or fraudulent business practice by defendants. Plaintiffs' default triggered the power of sale clause in the deed of trust, subjecting their property to nonjudicial foreclosure, not any of the alleged unfair competition practices. (See *id*. at p. 523 [so reasoning re impending foreclosure].)

*Jenkins* was decided on somewhat different facts from those of the present case; among other things, its reasoning is based in part on the circumstance that the plaintiff's default occurred prior to the acts alleged as the basis of her UCL claim. (*Jenkins*, *supra*, 216 Cal.App.4th at p. 523.) That is not so in the present case. Nevertheless, the causal link between the alleged acts and plaintiffs' injury is equally lacking. Although framed in different ways, plaintiffs' fifth, sixth and seventh causes of action are all grounded in the notion that the parties who initiated and conducted the foreclosure process lacked the authority to do so. Under *Jenkins*, the "injury" to a borrower in default is not caused by any such purported flaw. Plaintiffs' eighth and ninth causes of action are based on the notion that the indebtedness of the mortgage has been extinguished or satisfied, rendering their ownership of the property free and clear of any mortgage, either because of flaws in

7

the chain of assignments or the effect of the securitization process. Both theories are without merit, and therefore cannot serve as the basis for a UCL claim.[6]

In short, plaintiffs fail to establish standing to assert a UCL claim, and in any case have not pleaded any unlawful, unfair or fraudulent act on the part of defendants. As such, all of plaintiffs' UCL claims were properly dismissed on demurrer.

*3. The FAC Fails to State a Cause of Action for Fraud.*

Plaintiffs' tenth cause of action seeks to hold certain defendants liable for fraud. While acknowledging that the deed of trust specifically provides that the note or a partial interest in the note, together with the deed of trust, may be sold without prior notice, plaintiffs nevertheless contend that these defendants failed to disclose the "intent and effect of securitization . . . ." In particular, plaintiffs point to the "revenues" allegedly derived from the securitization of their loan, which plaintiffs contend were concealed from them. We agree with the trial court's ruling dismissing the claim.

Among other flaws in plaintiffs' fraud claim, there is no apparent reason why the provision of the deed of trust, explicitly providing that the note and deed of trust could be

---

[6] The eighth cause of action rests on a "separation of the note" theory, which is inconsistent with California law. (See, e.g., *Jenkins*, *supra*, 216 Cal.App.4th at p. 513 [nonjudicial foreclosure statutes "do not require that the foreclosing party have an actual beneficial interest in both the promissory note and deed of trust to commence and execute a nonjudicial foreclosure sale"].) The ninth cause of action is a variant of the "'vapor money'" theory, that is, "the convoluted and nonsensical argument that a plaintiff does not owe the money advanced by the lender on [his or her] loan because the indebtedness was not funded by the lender with actual money." (*Tonea v. Bank of Am., N.A.* (N.D.Ga., Mar. 18, 2014) 6 F.Supp.3d 1331, 1344.) No court of which we are aware has accepted this theory, and it is more often than not rejected as not only without merit, but frivolous. (*Id.* at pp. 1344-1345.)

8

sold in whole or in part, does not cover the subsequent securitization and sale of the note. The circumstance that defendants, or some of them, might derive revenue or even profit from such transactions is implicit in the concept of a sale. Plaintiffs therefore fail to adequately plead the first element of a fraud claim—intentional misrepresentation of a material fact—let alone the remaining elements. (See, e.g., *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 481 [discussing elements of fraud claim].) On that basis alone (among others that we need not discuss) the trial court did not err in dismissing plaintiffs' fraud claim.

*Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, a case emphasized and discussed at length by plaintiffs, does not require a different result. In *Boschma*, the court of appeal found the complaint adequately pleaded fraud because the mortgage disclosures at issue explicitly disclosed only that negative amortization *could* occur, not that it *would* occur if the borrower followed the only payment schedule provided. (*Id.* at pp. 234, 242-243.) The *Boschma* plaintiffs adequately alleged injury because they lost equity, despite paying on the loan according to the schedule provided. (*Id.* at p. 243.) The present case is distinguishable on its facts; plaintiffs here lost their equity in the property because they did *not* pay their mortgage according to schedule, and their default triggered the power of sale in the deed of trust. If anything, the contrast between the facts of this case and the facts of *Boschma* supports the proposition that plaintiffs not only failed to adequately allege an intentional misrepresentation of a material fact, but also failed to allege any viable theory of damages.

Plaintiffs' tenth cause of action for fraud was properly dismissed.

9

*4. Plaintiffs' Assertion of an Ownership Interest in Revenues From Securitization of Their Loan Is Without Merit.*

Plaintiffs' eleventh, twelfth, thirteenth, and fourteenth causes of action, for breach of the implied covenant of good faith and fair dealing, conversion, trespass to chattels, and money had and received, respectively, all rest on the notion that they are entitled to benefit from any revenues defendants may receive from securitization of their loan. They assert that any amounts received by defendants up to the amount of the mortgage must be credited toward the debt, so that once revenues in the amount of the loan are generated, defendants were "obligated to reconvey the Property to Plaintiffs." Moreover, plaintiffs assert that they are entitled to receive the benefit of any "excess money beyond [the amount of the loan]"

Plaintiffs' theory has no basis in law or reason. We decline to engage in the exercise of unraveling the jumble of arguments they advance in favor of it.[7] It suffices to note that defendants cite to no authority in which a court from any jurisdiction has given analogous arguments credence, and we are aware of none.

*5. Leave to Amend Was Properly Denied.*

On appeal, plaintiffs rest entirely on the proposition that their claims were adequately pleaded and the demurrer should have been overruled, making no argument that they should have been granted leave to amend their claims. In light of the above,

---

[7] These arguments may be summarized as a mixture of, among other things, an implausible reading of the deed of trust, generous elements of the frivolous "vapor money" theory we discuss above, and inapposite legal authority involving assignments outside the nonjudicial foreclosure context.

therefore, plaintiffs have demonstrated no error with respect to the trial court's decision to sustain defendants' demurrer without leave to amend.

## III.  DISPOSITION

The judgment is affirmed.  Defendants are awarded their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


CODRINGTON
J.

We concur:

MCKINSTER
Acting P. J.

KING
J.

11