Filed 5/8/15  Patino v. EMC Mortgage CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DANGEL PATINIO,<br><br>          Plaintiff and Appellant,<br><br>v.<br><br>EMC MORTGAGE, LLC et al.,<br><br>          Defendants and Respondents. | A140665<br><br>(Alameda County<br>Super. Ct. No. RG12657347) |

Plaintiff Dangel Patinio appeals from a judgment dismissing his first amended complaint against defendants JPMorgan Chase Bank, N.A. (Chase), EMC Mortgage, LLC (EMC), and Mortgage Electronic Registration Systems, Inc. (MERS) after the trial court sustained a demurrer without leave to amend.[1]  Plaintiff contends he has adequately pleaded causes of action for wrongful foreclosure, quiet title, fraud, violation of Civil Code section 2932.5, unfair competition (Bus. & Prof. Code, § 17200 et seq.), and unjust enrichment, all arising from the recordation of an allegedly false and unauthorized assignment of a deed of trust.  We conclude he has shown no error and affirm the judgment.

---

[1] An order sustaining a demurrer is not independently appealable.  (See Code Civ. Proc., § 904.1, subd. (a)(1).)  However, an appellate court may "deem the order on the demurrer as incorporating a judgment of dismissal and treat [the] notice of appeal as applying to the judgment."  (*Johnson v. Ralphs Grocery Co.* (2012) 204 Cal.App.4th 1097, 1101, fn. 3.)

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In November 2005, plaintiff executed a note for $457,600 (Note) secured by a deed of trust (DOT) on real property located in Newark (Property). The DOT was recorded on December 8, 2005.

The DOT names Greenpoint Mortgage Funding, Inc. (Greenpoint) as the lender, Marin Conveyancing Corporation as the trustee, and MERS as the beneficiary acting as nominee for the lender, its successors and assigns. The DOT provides MERS and its assigns with the right to exercise any of the lender's rights, including the right to foreclose in the event of default. The DOT also states, "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."

The original servicer of plaintiff's mortgage loan was Greenpoint. Subsequently, EMC assumed the servicing of the loan. EMC sold its servicing rights to Chase.

Greenpoint allegedly sold plaintiff's mortgage loan to the Greenpoint MTA Trust 2006-AR2, Mortgage Pass-Through Certificates, Series 2006-ARS (the Loan Trust) on or before its closing date of March 31, 2006 specified in the Pooling and Servicing Agreement (PSA) governing the trust.

On July 8, 2010, NDEx West, LLC (NDEx) recorded a notice of default showing plaintiff was $22,586 in arrears at that time.[2] The notice of default stated that NDEx was acting as "Agent for the Trustee or Beneficiary under a Deed of Trust dated 11/28/2005, executed by Dangel Patinio, as Trustor. . . ."

On July 26, 2010, MERS, as the agent for Greenpoint, purported to assign the DOT, together with the Note, to Wells Fargo Bank, N.A. (Wells Fargo) as trustee for the Loan Trust. The assignment was executed by Lisa Ferrington, identified as a MERS vice-president, and was recorded on August 3, 2010.

On August 9, 2010, Wells Fargo substituted NDEx as the trustee under the DOT by recording a substitution of trustee.

---

[2] Plaintiff never disputed his default, which he acknowledges in his brief on appeal.

On October 11, 2010, NDEx recorded a notice of trustee's sale, indicating that the unpaid balance on the loan was $519,384.

On January 11, 2011, the Property was sold at foreclosure.

On January 14, 2011, NDEx recorded a trustee's deed upon sale, whereby title to the Property was granted to Wells Fargo as trustee for the Loan Trust.

On November 26, 2012, plaintiff filed a complaint against defendants stating causes of action for wrongful foreclosure, quiet title, fraud, violation of Civil Code section 2932.5, violation of Business and Professions Code section 17200, and unjust enrichment.

On April 3, 2013, defendants Chase, EMC, and MERS filed a demurrer to the complaint.

Plaintiff did not oppose the demurrer, which was sustained with leave to amend on June 11, 2013.

On July 1, 2013, plaintiff filed the operative first amended complaint (FAC), stating the same six causes of action as in the initial complaint.[3] He alleged as the basis of his complaint that, in the process of securitizing his mortgage, defendants "created and recorded robo-signed, defective and fraudulent documents." He further contended that MERS had no power to assign the DOT after March 31, 2006, and alleged that Ferrington was employed by Chase, not MERS, at the time she executed the Assignment and was not acting as an authorized agent of the beneficiary.[4] He also asserted NDEx had no power to issue the notice of default because neither EMC nor Chase was the true beneficiary of plaintiff's loan. He sought to void the foreclosure sale and requested "an order forever enjoining the defendants, and each of them, their agents, representatives, successors and assigns, from initiating and pursuing foreclosure activity against [him] relating to the Subject Property."

---

[3] The cause of action for fraud was modified to state a claim for constructive fraud.

[4] Civil Code section 2924, subdivision (a)(1) states that a "trustee, mortgagee, or beneficiary, or any of their authorized agents" may initiate the nonjudicial foreclosure process.

On July 19, 2013, defendants Chase, EMC and MERS filed a demurrer to the FAC. Among their arguments, they asserted plaintiff lacked standing to challenge the foreclosure proceedings because he failed to allege he was willing and able to tender the amount owed on his loan.

On October 22, 2013, plaintiff filed his opposition to the demurrer.

On November 1, 2013, the trial court executed its order sustaining the demurrer without leave to amend. Specifically, the court found plaintiff had not alleged credible tender or facts in support of an exception to the tender rule. The court also found his claims failed to the extent they were based on the securitization or unlawful assignment of the Note. Additionally, as to his fraud claim, he failed to demonstrate detrimental reliance.

On December 30, 2013, plaintiff filed a notice of appeal from the judgment of dismissal after the order sustaining the demurrer.

## DISCUSSION

### I. *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the sustaining of a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415; *Estate of Moss* (2012) 204 Cal.App.4th 521, 535.) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice has been taken. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) We construe the pleading in a reasonable manner and read the allegations in context. (*Ibid.*) We must affirm the judgment if the sustaining of a general demurrer was proper on any of the grounds stated in the demurrer, regardless of the trial court's stated reasons. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

It is an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable probability that the defect can be cured by amendment. (*Schifando v. City of Los Angeles, supra,* 31 Cal.4th at p. 1081.) The plaintiff has the burden to show how the

4

complaint could be amended to cure any defect.  (*Ibid.*)  The plaintiff can make that showing for the first time on appeal.  (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386.)

## II.    *General Principles Regarding Deeds of Trust and Nonjudicial Foreclosure*

"The financing or refinancing of real property in California is generally accomplished by the use of a deed of trust."  (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 507 (*Jenkins*).)  "There are three parties in the typical deed of trust: the trustor (debtor), the beneficiary (lender), and the trustee."  (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813.)  A deed of trust conveys title to real property from the trustor (debtor) to a third party trustee to secure the payment of a debt owed to the beneficiary (lender) under a promissory note.  The customary provisions of a valid deed of trust include a power of sale clause, which empowers the beneficiary to foreclose on the real property security if the trustor fails to pay back the debt owed under the promissory note.  (*Jenkins,* at p. 508.)  The DOT in this case granted the power of sale to both the trustee and the beneficiary, as well as the beneficiary's nominee, MERS.

Although the deed of trust technically conveys title to the real property from the trustor (debtor) to the trustee, "the extent of the trustee's interest in the property is limited to what is necessary to enforce the operative provisions of the deed of trust."  (*Jenkins, supra,* 216 Cal.App.4th at p. 508.)  Generally, a deed of trust requires the trustee to perform one of two "mutually exclusive duties":  (1) if the trustor (debtor) defaults on the debt, the trustee must initiate foreclosure on the property for the benefit of the beneficiary (lender); or (2) if the trustor satisfies the secured debt, the trustee must convey title to the real property back to the trustor, extinguishing the security device.  (*Ibid.*)  Despite the security interest the deed of trust creates, the trustor "retains all incidents of ownership with regard to the real property, including the rights of possession and sale."  (*Ibid.*)

When a borrower defaults on a debt secured by a deed of trust, the lender may elect to judicially or nonjudicially foreclose on the real property security.  "Nonjudicial foreclosure is less expensive and more quickly concluded than judicial foreclosure, since there is no oversight by a court, '[n]either appraisal nor judicial determination of fair

value is required,' and the debtor has no postsale right of redemption.  [Citation.]" (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1236.)

Civil Code sections 2924 through 2924k set forth a " 'comprehensive framework for the regulation of a *nonjudicial* foreclosure sale pursuant to a power of sale contained in a deed of trust.' [Citation.]" (*Jenkins, supra,* 216 Cal.App.4th at p. 508, original italics; *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830.)  "These provisions cover every aspect of exercise of the power of sale contained in a deed of trust." (*I.E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 285.)  " 'Because of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute.' [Citations.]" (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154 (*Gomes*).)

A nonjudicial foreclosure is "presumed to have been conducted regularly, and the burden of proof rests with the party attempting to rebut this presumption." (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 270 (*Fontenot*) [applying presumption in action for wrongful foreclosure brought after sale had occurred]; *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 443 [applying presumption in action to prevent nonjudicial foreclosure sale from occurring].) Therefore, a debtor who seeks to challenge a nonjudicial foreclosure based on the foreclosing entity's purported lack of authority must "affirmatively" plead facts demonstrating a lack of authority.  (*Fontenot,* at p. 270; *Jenkins, supra,* 216 Cal.App.4th at p. 512 [to state a cause of action challenging a foreclosing entity's authority to conduct a nonjudicial foreclosure, the trustor (debtor) must allege a " '*specific factual basis'* " establishing a lack of authority (original italics)]; *Gomes, supra,* 192 Cal.App.4th at pp. 1155–1156.)

### III. *Standing to Challenge Loan Securitization*

Relying on *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079 (*Glaski*), plaintiff claims he is permitted to challenge the validity of the securitization of his loan.[5] He contends the FAC's allegations state a cognizable claim contesting defendants' ownership of the DOT and their right to foreclose on his home.

However, even if his securitization claims have merit, we conclude plaintiff lacks standing because he has no interest in the Note and DOT: "[T]he relevant parties to such a transaction were the holders (transferors) of the promissory note and the third party acquirers (transferees) of the note. . . . As an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, [plaintiff] lacks standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions." (*Jenkins, supra,* 216 Cal.App.4th at p. 515.) To explain further: "Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note." (*Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1507 (*Herrera*).)

We agree with the courts that have concluded that, because their obligations to pay their loans remained unchanged, borrowers are not themselves victims of invalid transfers: "Instead, the true victim may be an individual or entity that believes it has a present beneficial interest in the promissory note and may suffer the unauthorized loss of its interest in the note. It is also possible to imagine one or many invalid transfers of the promissory note may cause a string of civil lawsuits between transferors and

---

[5] "In simplified terms, 'securitization' is the process where (1) many loans are bundled together and transferred to a passive entity, such as a trust, and (2) the trust holds the loans and issues investment securities that are repaid from the mortgage payments made on the loans. [Citation.] Hence, the securities issued by the trust are 'mortgage-backed.' " (*Glaski, supra,* 218 Cal.App.4th at p. 1082, fn. 1.)

7

transferees[,]" but plaintiff "may not assume the theoretical claims of hypothetical transferors and transferees . . . ." (*Jenkins, supra,* 216 Cal.App.4th at p. 515.)

Plaintiff asserts *Glaski, supra,* 218 Cal.App.4th 1079 supports his argument that a borrower may challenge a nonjudicial foreclosure based on allegations that transfers in the chain of title of a trust deed are void. In *Glaski,* after concluding that noncompliance with the terms of a pooling and servicing agreement would render an assignment void and not merely voidable, the *Glaski* court adopted the majority rule in Texas that an obligor may resist foreclosure on any ground that renders an assignment in the chain of title void. (*Glaski*, at p. 1095, citing *Reinagel v. Deutsche Bank National Trust Co.* (5th Cir. 2013) 722 F.3d 700, 705.) Based upon this theory, the *Glaski* court held the plaintiff had standing to assert a claim for wrongful foreclosure.[6] The court further held that under New York law, a securitized mortgage trustee's acceptance of a loan after the trust's closing date would be void in contravention of the trust document and would jeopardize the trust's special tax status. (*Glaski*, at p. 1097.)

California federal courts have rejected *Glaski*. (See *Haddad v. Bank of America, N.A.* (S.D.Cal. Jan. 8, 2014, No. 12cv3010-WQH-JMA) 2014 U.S. Dist. Lexis 2205; *Subramani v. Wells Fargo Bank N.A.* (N.D.Cal. Oct. 31, 2013, No. C 13-1605 SC) 2013 U.S. Dist. Lexis 156556; *Dahnken v. Wells Fargo Bank, N.A.* (N.D.Cal. Nov. 8, 2013, No. C 13-2838 PJH) 2013 U.S. Dist. Lexis 160686; *Maxwell v. Deutsche Bank Nat. Trust Co.* (N.D.Cal. Nov. 18, 2013, No. 13-cv-03957-WHO) 2013 U.S. Dist. Lexis 164707; *Apostol v. CitiMortgage, Inc.* (N.D.Cal. Nov. 21, 2013, No. 13-cv-01983-WHO) 2013 U.S. Dist. Lexis 167308; *Zapata v. Wells Fargo Bank, N.A.* (N.D.Cal. Dec. 10, 2013, No. C 13-04288 WHA) 2013 U.S. Dist. Lexis 173187; *Rivac v. Ndex West LLC* (N.D.Cal. Dec. 17, 2013, No. C 13-1417 PJH) 2013 U.S. Dist. Lexis 177073; *Sepehry-Fard v. Dept. Stores Nat. Bank* (N.D.Cal. Dec. 13, 2013, No. 13-cv-03131-WHO) 2013 U.S. Dist. Lexis 175320.) Additionally, the Second Circuit Court of Appeals has rejected

---

[6] The appellate court concluded Glaski's claims for fraud failed for failure to allege detrimental reliance. (*Glaski, supra,* 218 Cal.App.4th 1079, 1091–1092.)

*Glaski*'s view of New York law, and has concluded defective transfers of deeds of trust are voidable, and are not void.  (See *Rajamin v. Deutsche Bank* (2d. Cir. 2014) 757 F.3d 79, 90.)

No California cases support the *Glaski* analysis.[7]  We follow the federal lead in rejecting this minority holding.  Plaintiff alleges nothing unlawful except that an allegedly deficient assignment and securitization deprived Wells Fargo of an interest in the property.  He has no standing to make such a claim.

In *Jenkins, supra,* 216 Cal.App.4th 497, the court addressed similar "attempts to construct a dispute between [the plaintiff] and Defendants with regard to the alleged improper transfer of the promissory note during the securitization process." (*Id.* at p. 514.)  The *Jenkins* court held "even if the asserted improper securitization (or any other invalid assignments or transfers of the promissory note subsequent to her execution of the note . . .) occurred, the relevant parties to such a transaction were the holders (transferors) of the promissory note and the third party acquirers (transferees) of the note. 'Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor.  As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note.' [Citation.]  As an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, [the plaintiff] lacks standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions." (*Id.* at pp. 514–515.)

We conclude plaintiff has no standing to raise this argument.  The question is currently pending before our Supreme Court in *Yvanova v. New Century Mortgage Corp.*,

---

[7] *Glaski's* reasoning relies on two federal court of appeals cases interpreting the law of other jurisdictions and an unpublished federal district court case.  (See *Glaski, supra,* 218 Cal.App.4th at p. 1094, citing to *Conlin v. Mortgage Electronic Registration Systems, Inc.* (6th Cir. 2013) 714 F.3d 355, 361; *Culhane v. Aurora Loan Services of Nebraska* (1st Cir. 2013) 708 F.3d 282, 291; *Gilbert v. Chase Home Finance, LLC* (E.D.Cal. May 28, 2013, No. 1:13-CV-265 AWI SKO) 2013 WL 2318890.)

9

review granted August 29, 2014, S218973.[8]  Unless or until our Supreme Court holds otherwise, we agree with the courts that have concluded a borrower lacks standing to object to irregularity in a loan's securitization.

## IV.    *Plaintiff Failed to Allege Prejudice*

Finally, even if we assume that plaintiff's allegations are sufficient to show he has standing to assert a defect in the assignment, his FAC is still properly subject to demurrer because he did not allege "facts showing that [he] suffered prejudice as a result of any lack of authority of the parties participating in the foreclosure process." (*Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 85.) "Prejudice is not presumed from 'mere irregularities' in the process.  [Citation.]" (*Fontenot, supra,* 198 Cal.App.4th at p. 272.)

Plaintiff concedes that he is in default and does not suggest how he has suffered prejudice.  (See *Herrera, supra,* 205 Cal.App.4th at p. 1507.)  The type of prejudice that must be shown is " 'that the foreclosure would have been averted but for [the] alleged deficiencies.'  [Citations.]" (*Albano v. Cal-Western Reconveyance Corp.* (N.D. Cal. 2012) 2012 WL 5389922 at p. *6; see also *Ghuman v. Wells Fargo Bank, N.A.* (E.D. Cal. 2012) 2012 WL 2263276 at p. *5 [plaintiffs failed to show how defect in substitution of trustee was prejudicial, "given Plaintiffs have offered no facts to suggest the substitution of NDEx (or the allegedly improper recording thereof) adversely affected their ability to pay their debt or cure their default"].)  Plaintiff has not alleged, and apparently cannot allege, that the "true" beneficiary would have refrained from foreclosing after his conceded default.  Because plaintiff's claims fail for other reasons, we need not address tender as a basis for upholding the demurrer.

Apart from his fraud claim, plaintiff does not raise any additional arguments concerning the remaining causes of action.  As to the allegations that the recorded documents are forgeries rendering defendants liable for fraud, we note the prevailing

---

[8] This issue is framed as follows: "In an action for wrongful foreclosure on a deed of trust securing a home loan, does the borrower have standing to challenge an assignment of the note and deed of trust on the basis of defects allegedly rendering the assignment void?"

view in federal district court cases considering California law is that plaintiff homeowners lack standing to challenge the validity of robo-signatures.  (See *Bennett v. Wells Fargo Bank, N.A.* (N.D.Cal. Aug. 9, 2013, No. CV 13-01693-KAW) 2013 WL 4104076; *Maynard v. Wells Fargo Bank, N.A.* (S.D.Cal. Sept. 11, 2013, No. 12cv1435 AJB (JMA)) 2013 WL 4883202, p. *9 ["Countless courts have concurred in this result, finding that where a plaintiff alleges that a document is void due to robo-signing, yet does not contest the validity of the underlying debt, and is not a party to the assignment, the plaintiff does not have standing to contest the alleged fraudulent transfer."].)

## V.    *Leave to Amend*

Plaintiff argues he should be allowed leave to amend because "any perceived defects in the [FAC] can be cured by amendment," and represents that he "may amend the [FAC] to plead additional facts that would substantiate his causes of action."  He does not otherwise argue that the trial court abused its discretion in denying leave to amend.  His vague proposals fail to show that it is reasonably probable he could amend his complaint to state a viable cause of action.

## DISPOSITION

The judgment is affirmed.

_____
Dondero, J.

We concur:

_____
Humes, P.J.

_____
Banke, J.

11