Filed 6/23/16  Torres v. U.S. Bank Nat. Assn. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JULIO C. TORRES et al., | |
| Plaintiffs and Appellants, | G051406 |
| v. | (Super. Ct. No. 30-2013-00681084) |
| U.S. BANK NATIONAL ASSOCIATION, as Trustee, etc., et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Linda S. Marks, Judge.  Affirmed.

Law Office of Ronald H. Freshman and Ronald H. Freshman for Plaintiffs and Appellants.

Houser & Allison, Robert W. Norman and Emile K. Edling for Defendants and Respondents.

\*          \*          \*

In borrowing $1 million to purchase their home, plaintiffs and appellants Julio C. Torres and Norma Giselle Torres (collectively, Torreses) executed a promissory note and deed of trust granting their lender a security interest in their residence. The Torreses later declared bankruptcy and fell behind in their loan payments, but continued to reside in their home under two security retention agreements in which the loan servicer agreed not to foreclose if the Torreses timely made the loan payments specified in the agreements. The Torreses alleged they are current on their payments, they continue to reside in their home, and no foreclosure proceedings are pending against their home.

The Torreses nonetheless filed this action seeking to cancel the note, the deed of trust, and all documents recorded against their home based on those instruments. They also seek to recover the payments they have made on the loan and approximately $13 million in compensatory and punitive damages. The Torreses base their causes of action on the claim the note, the deed of trust, and an assignment of the deed of trust to a securitized mortgage investment trust were void, and therefore the defendants[1] had no rights or interests in the loan or the Torreses' home.

According to the Torreses, Defendants damaged them and clouded their title by recording numerous documents against the Torreses' home without authority to do so, including two notices of default and election to sell, which the Torreses acknowledge have been rescinded. The Torreses alleged the note and deed of trust were void because they misidentified the lender that provided the funds for the Torreses' loan, although the Torreses do not claim they have been subjected to competing demands for loan payments or that they did not know who to pay. The Torreses alleged the

---

[1] Defendants and respondents are (1) U.S. Bank National Association, as trustee for Mastr Adjustable Rate Mortgages Trust 2007-1, Mortgage Pass-Through Certificates, Series 2007-1, (2) Power Default Services, Inc., (3) Homeward Residential, Inc., (4) Mortgage Electronic Registration Systems, Inc., and (4) Ocwen Loan Servicing, LLC (collectively, Defendants).

2

assignment of the trust deed was void because it was made after the investment trust had closed, and therefore the trustee exceeded its authority by accepting the assignment.

The trial court dismissed the Torreses' complaint after sustaining Defendants' demurrer without leave to amend. We affirm. The Torreses forfeited their claim the note and the trust deed were void based on the purported misidentification of the lender because they failed to raise that theory in their opening brief. Regardless, the statutory authority to which the Torreses make passing reference in their reply does not establish the alleged misidentification rendered the note and trust deed void.

We also conclude the Torreses lacked standing to challenge the assignment of the trust deed because the defect they asserted merely would render the assignment voidable. Under the New York law that governs the investment trust, a trust beneficiary may ratify any act of a trustee that exceeds the trustee's authority, and thereby validate an allegedly unenforceable act or agreement, such as the assignment. Moreover, even if the alleged defect rendered the assignment void and incapable of being ratified, the Torreses still would lack standing because there has been no foreclosure on their home. Borrowers such as the Torreses may challenge the authority of an entity foreclosing on their home only after a foreclosure has occurred because allowing a preforeclosure challenge conflicts with the nonjudicial foreclosure statutory scheme the Legislature established as a quick and efficient means of enforcing real property security interests. Case law establishes that a homeowner may not compel an entity to establish its authority in court before it conducts a nonjudicial foreclosure.

I

LEGAL BACKGROUND

A.    *Trust Deeds, Nonjudicial Foreclosures, and the Mortgage Securitization Process*

"A deed of trust to real property acting as security for a loan typically has three parties:  the trustor (borrower), the beneficiary (lender), and the trustee.  'The

3

trustee holds a power of sale.  If the debtor defaults on the loan, the beneficiary may demand that the trustee conduct a nonjudicial foreclosure sale.' [Citation.]  The nonjudicial foreclosure system is designed to provide the lender-beneficiary with an inexpensive and efficient remedy against a defaulting borrower, while protecting the borrower from wrongful loss of the property and ensuring that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser." (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 926 (*Yvanova*).)

"The trustee starts the nonjudicial foreclosure process by recording a notice of default and election to sell.  [Citation.]  After a three-month waiting period, and at least 20 days before the scheduled sale, the trustee may publish, post, and record a notice of sale.  [Citations.]  If the sale is not postponed and the borrower does not exercise his or her rights of reinstatement or redemption, the property is sold at auction to the highest bidder.  [Citations.]  Generally speaking, the foreclosure sale extinguishes the borrower's debt; the lender may recover no deficiency." (*Yvanova*, *supra*, 62 Cal.4th at p. 927.)

"The trustee of a deed of trust is not a true trustee with fiduciary obligations, but acts merely as an agent for the borrower-trustor and lender-beneficiary. [Citations.]  While it is the trustee who formally initiates the nonjudicial foreclosure, by recording first a notice of default and then a notice of sale, the trustee may take these steps only at the direction of the person or entity that currently holds the note and the beneficial interest under the deed of trust—the original beneficiary or its assignee—or that entity's agent." (*Yvanova*, *supra*, 62 Cal.4th at p. 927.)

"[A] borrower can generally raise no objection to assignment of the note and deed of trust.  A promissory note is a negotiable instrument the lender may sell without notice to the borrower.  [Citation.]  The deed of trust, moreover, is inseparable from the note it secures, and follows it even without a separate assignment.  [Citations.] . . . [¶]  A deed of trust may thus be assigned one or multiple times over the life of the loan it secures.  But if the borrower defaults on the loan, only the current beneficiary may

4

direct the trustee to undertake the nonjudicial foreclosure process. '[O]nly the "true owner" or "beneficial holder" of a Deed of Trust can bring to completion a nonjudicial foreclosure under California law.'" (*Yvanova*, *supra*, 62 Cal.4th at pp. 927-928.)

"A beneficiary or trustee under a deed of trust who conducts an illegal, fraudulent or willfully oppressive sale of property may be liable to the borrower for wrongful foreclosure. [Citations.] A foreclosure initiated by one with no authority to do so is wrongful for purposes of such an action." (*Yvanova*, *supra*, 62 Cal.4th at p. 929.)

The ready transferability of promissory notes and deeds of trusts led banks to create securitized mortgage investment trusts to raise funds for making new mortgages. Through the securitization process "'a mortgage lender sells pools of mortgages into trusts created to receive the stream of interest and principal payments from the mortgage borrowers. The right to receive trust income is parceled into certificates and sold to investors, called certificateholders. The trustee hires a mortgage servicer to administer the mortgages by enforcing the mortgage terms and administering the payments. The terms of the securitization trusts as well as the rights, duties, and obligations of the trustee, seller, and servicer are set forth in a Pooling and Servicing Agreement.'" (*Yvanova*, *supra*, 62 Cal.4th at p. 930, fn. 5; see *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1082 & fn. 1 (*Glaski*).)

Mortgage Electronic Registration Systems, Inc. (MERS) "was formed by a consortium of residential mortgage lenders and investors to streamline the transfer of mortgage loans and thereby facilitate their securitization." (*Yvanova*, *supra*, 62 Cal.4th at p. 931, fn. 7.) "'[It] administers a national registry of real estate debt interest transactions. Members of the MERS System assign limited interests in the real property to MERS, which is listed as a grantee in the official records of local governments, but the members retain the promissory notes and mortgage servicing rights. The notes may thereafter be transferred among members without requiring recordation in the public records. [Citation.] [¶] Ordinarily, the owner of a promissory note secured by a deed of

5

trust is designated as the beneficiary of the deed of trust. [Citation.] Under the MERS System, however, MERS is designated as the beneficiary in deeds of trust, acting as "nominee" for the lender, and granted the authority to exercise legal rights of the lender.'" (*Saterbak v. JPMorgan Chase Bank* (2016) 245 Cal.App.4th 808, 816, fn. 6 (*Saterbak*).) "When a loan is assigned to another MERS member, MERS can execute the transfer by amending its electronic database. When the loan is assigned to a nonmember, MERS executes the assignment and ends its involvement." (*Yvanova*, at p. 931, fn. 7.)

II

FACTS AND PROCEDURAL HISTORY[2]

In 2006, Julio C. Torres executed an adjustable rate note and deed of trust to borrow more than $1,030,000 toward the purchase of a home in Laguna Niguel, California (Property).[3] The trust deed identified the Torreses as the borrowers and

---

[2] The Torreses' opening brief is "seriously defective" because it failed to provide an adequate "summary of the significant facts" as required by California Rules of Court, rule 8.204(a)(2)(4). (*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 868-869.) The brief included a section entitled "Summary of Significant Facts of Matters on the Record," but that section did not summarize the allegations of the Torreses' complaint, explain each party's role, identify the loan's or property's status, or otherwise provide any details necessary to understand the basis for the Torreses' claims or the trial court's ruling. Instead, the Torreses provided a litany of conclusions on why the court allegedly erred without providing any of the facts or allegations needed to support those conclusions. We are left to determine the essential facts and allegations from our independent review of the 56-page complaint and its approximately 850 pages of exhibits. The Torreses therefore waived any objection that we have overlooked any specific allegations required to understand or support their claims. (*William Jefferson & Co., Inc. v. Orange County Assessment Appeals Bd. No. 2* (2014) 228 Cal.App.4th 1, 6, fn. 2.)

[3] Julio C. Torres is a married man who purchased the Property as his sole and separate property, but one month later he conveyed the Property to Julio C. Torres and Norma Giselle Torres, as trustees of the 2006 La Esmeralda Revocable Family Trust, dated November 10, 2006. The Torreses jointly filed this action and make no effort to distinguish their interests in the Property. We therefore refer to both of the Torreses as the borrowers on the loan.

trustors, California Title Company as the trustee, and American Home Mortgage, "a [c]orporation organized and existing under the laws of the State of New York," as the "Lender." It stated, "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument." (Boldface omitted.) The trust deed granted the trustee the power to sell the Property if the Torreses defaulted on the loan, and also provided the note and trust deed could be sold "one or more times without prior notice to [the Torreses]." American Home Mortgage Servicing, Inc. (AHM Servicing) served as the original loan servicer and later became known as Homeward Residential, Inc. (Homeward).

Sometime after they purchased the Property, the Torreses filed for bankruptcy, and in July 2008, they received an order discharging their debts under Chapter 7 of the United States Bankruptcy Code. A few months later, they executed a security retention agreement acknowledging their bankruptcy discharge prevented AHM Servicing from enforcing the loan against them individually, but did not prevent AHM Servicing from exercising its right to foreclose on the Property under the trust deed. Under this agreement, AHM Servicing agreed not to foreclose on the Property if the Torreses remained current on their loan payments as designated in the agreement.

In November 2010, Power Default Services, Inc. (Power Default), through its agent T.D. Service Company, recorded a notice of default and election to sell, informing the Torreses they were in default under the loan and Power Default would conduct a nonjudicial foreclosure sale if they did not timely cure the default. The notice explained Power Default was "either the original Trustee, the duly appointed substituted Trustee, or acting as agent for the Trustee or Beneficiary under the . . . Deed of Trust." In January 2011, Power Default recorded a rescission notice, cancelling the default notice.

In late June 2011, MERS recorded a notice that it had assigned the Torreses' trust deed to U.S. Bank National Association (US Bank), as trustee for a New York securitized mortgage investment trust entitled "Mastr Adjustable Rate

7

Mortgages Trust 2007-1, Mortgage Pass-Through Certificates, Series 2007-1" (Trust). In late June, Power Default filed a new notice of default and election to sell, notifying the Torreses they again were in default and the Property would be sold at a nonjudicial foreclosure sale if they did not timely cure the default. In July 2011, U.S. Bank recorded a document substituting Power Default for California Title Company as the trustee under the deed of trust. This substitution stated its effective date was June 15, 2011.

In October 2011, Power Default recorded a rescission notice, canceling the second default notice. One month later, the Torreses executed a second security retention agreement, again acknowledging AHM Servicing's right to foreclose on the Property based on the deed of trust, and also acknowledging their failure to make several payments on the loan during 2011. Under this agreement, AHM Servicing agreed to forebear foreclosing on the Property if the Torreses made the modified loan payments described in the agreement. In February 2013, Homeward sent a letter notifying the Torreses Ocwen Loan Servicing, LLC (Ocwen) was taking over as the servicer on their loan.

Although the Torreses alleged they are current on all payments, they continue to live on the Property, and no foreclosure proceedings are pending, they filed this action for damages and to clear their title to the Property. The operative second amended complaint named US Bank, Power Default, Homeward, MERS, and Ocwen as defendants, and alleged claims for (1) negligent misrepresentation; (2) quasi-contract; (3) unfair business practices (Bus. & Prof. Code, § 17200, et seq.); (4) declaratory relief to cancel instruments (Code Civ. Proc, § 1060; Civ. Code, § 3412); and (5) quiet title. The Torreses' complaint sought $320,000 as restitution for the payments they made to Homeward and Ocwen as the loan's servicers, more than $4 million in damages for the diminution in the Property's value caused by the various documents Defendants recorded against the Property, punitive damages of nearly $9 million, an order quieting title to the Property in the Torreses and against all Defendants, and a judgment cancelling the adjustable rate note, the deed of trust, both default notices, the assignment of the trust

8

deed, the substitution of trustee, and "all instrument(s) or documents recorded and unrecorded, which could be construed as constituting a break in or cloud on [the Torreses'] title to the . . . Property."

The Torreses base their causes of action on the allegations the note, the deed of trust, and the assignment of the deed of trust were void *ab initio*, and therefore Defendants had no right to receive loan payments, no security interest in the Property, and no authority to commence nonjudicial foreclosure proceedings or record any document against the Property. According to the Torreses, the note and deed of trust were void because they identified American Home Mortgage as the "Lender," but American Home Mortgage was a fictitious entity that did not exist and was not the entity that advanced the money used to fund the Torreses' loan. Because the note and deed of trust were void *ab initio*, the Torreses alleged the loan they received to purchase the Property was an unsecured obligation discharged in their bankruptcy, and the documents Defendants recorded against the Property based on the note and the trust deed were unauthorized clouds the Torreses have the right to remove from their title.

The Torreses also alleged MERS's assignment of the trust deed to US Bank, and the documents recorded against the Property based on that assignment, were void because the Trust was governed by New York law, which declares void any action by a trustee that contravenes a trust's express terms. According to the Torreses, the Trust's terms stated that the Trust closed in January 2007, and no further notes, deeds of trust, or other assets could be transferred into the Trust after that date, but US Bank, as the Trust's trustee, accepted MERS's assignment of the deed of trust in mid-2011.

Defendants demurred to the second amended complaint, contending the entire complaint and each individual cause of action failed to allege facts sufficient to state a claim. The trial court agreed and sustained the demurrer without leave to amend. The court concluded the Torreses lacked standing to challenge MERS's assignment to US Bank because the Torreses were not parties to the Trust, and therefore could not

9

challenge any alleged violation of the Trust's terms. Because the Torreses based their entire case on the invalid assignment, the court determined all causes of action failed to state a claim. The court's ruling did not expressly address the Torreses' theory the note and deed of trust were void.

The court also concluded (1) the negligent misrepresentation claim failed because the Torreses did not allege facts showing Defendants owed a duty to disclose any additional information or that the alleged misrepresentations harmed the Torreses; (2) the unjust enrichment claim failed because the Torreses did not allege facts showing the underlying obligation was invalid and therefore none of the payments the Torreses made unjustly enriched Defendants; (3) the unfair competition claim failed because the Torreses did not allege Defendants violated any statute providing a private right of action; (4) the declaratory relief cause of action failed because it had "crystallized" into the other four causes of action; and (5) the quiet title claim failed because the Torreses did not allege they tendered the amount needed to reinstate or pay off the loan.

After the court entered judgment, this appeal followed.

III

DISCUSSION

A.     *Standard of Review and the Torreses' Burden on Appeal*

"We review the ruling sustaining the demurrer de novo, exercising independent judgment as to whether the complaint states a cause of action as a matter of law." (*Kan v. Guild Mortgage Co.* (2014) 230 Cal.App.4th 736, 740 (*Kan*).) "'[W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law.'" (*Glaski*, *supra*, 218 Cal.App.4th at p. 1090.)

10

"The allegations that we accept as true necessarily include the contents of any exhibits attached to the complaint, and in the event of a conflict between the pleading and an exhibit, the facts contained in the exhibit take precedence over and supersede any inconsistent or contrary allegations in the pleading." (*Jibilian v. Franchise Tax Bd.* (2006) 136 Cal.App.4th 862, 864 & fn. 1; see *Glaski*, *supra*, 218 Cal.App.4th at p. 1090.) We also consider facts that are properly subject to judicial notice, and give those facts precedence over inconsistent or contradictory facts alleged in the complaint.[4] (*Hill v. Roll International Corp.* (2011) 195 Cal.App.4th 1295, 1300.)

Although we review the complaint de novo, "'[t]he plaintiff has the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action and overcoming all of the legal grounds on which the trial court sustained the demurrer, and if the defendant negates any essential element, we will affirm the order sustaining the demurrer as to the cause of action. [Citation.] We will affirm if there is any ground on which the demurrer can properly be sustained, whether or not the trial court relied on proper grounds or the defendant asserted a proper ground in the trial court proceedings.'" (*Rossberg v. Bank of America* (2013) 219 Cal.App.4th 1481, 1490-1491.) Indeed, it is the trial court's ruling we review, not its reasons or rationale. (*Kan*, *supra*, 230 Cal.App.4th at p. 740.)

---

[4] The Torreses contend the trial court erred in taking judicial notice of the deed of trust, the assignment of the deed of trust, and the substitution of trustee. They acknowledge a court may judicially notice these recorded documents, but contend the trial court erred by judicially noticing certain disputed facts in the documents, such as who was the beneficiary under the deed of trust and whether the assignment and substitution conferred any legal rights on the parties identified therein. We do not decide whether the trial court could take judicial notice of these documents. The Torreses attached these same recorded documents as exhibits to their second amended complaint and incorporated them into that pleading by reference. It therefore is irrelevant whether the trial court could judicially notice these documents because the documents already were before the court, and any limits on judicially noticing the documents did not apply.

11

B.     *The Torreses Failed to Allege Facts Stating Any Cause of Action Against*
       *Defendants*

As stated above, the Torreses based their causes of action on their claim the

note, the deed of trust, and the assignment of the deed of trust were void *ab initio*.  The

Torreses relied on two separate theories to show these instruments were void, but they

failed to allege sufficient facts to support either theory.[5]

1.     The Torreses Failed to Establish Any Alleged Error in Identifying the
       "Lender" Rendered the Note and Deed of Trust Void

The Torreses first alleged the note and deed of trust were void because

those documents identified American Home Mortgage as the "Lender," but the Torreses

were unable to locate any governmental filings, registrations, or other documents

showing an entity with that exact name existed and was capable of receiving a security

---

[5]     In both their opening and reply briefs, the Torreses improperly cite
unpublished Court of Appeal decisions and unrelated trial court decisions.  (Cal. Rules of
Ct., rule 8.1115; *People v. Williams* (2009) 176 Cal.App.4th 1521, 1529 (*Williams*)
[citations to unpublished Court of Appeal decisions "absolutely prohibited," absent
exceptions not applicable here]; *San Diego County Employees Retirement Assn. v.
County of San Diego* (2007) 151 Cal.App.4th 1163, 1184 ["A trial court judgment cannot
properly be cited in support of a legal argument, absent exceptions not applicable here"].)
The Torreses contend their citations to unpublished Court of Appeal decisions were
appropriate under California Rules of Court, rule 8.1115(b)(1), which allows citation to
an unpublished decision "[w]hen the opinion is relevant under the doctrines of law of the
case, res judicata, or collateral estoppel."  Not so.  The Torreses offer no explanation how
any of those doctrines apply in this case, and we can conceive of no colorable argument
for their application.  Moreover, the Torreses make no attempt to justify their citation to
unpublished trial court decisions.

We caution the Torreses' counsel that citation to unpublished decisions may
support an award of sanctions, and counsel should refrain from doing so in the future.
(See *Williams*, *supra*, 176 Cal.App.4th at p. 1529; *Alicia T. v. County of Los Angeles*
(1990) 222 Cal.App.3d 869, 885.)  Indeed, "Counsel would be well served to heed this
advice by a leading treatise writer:  'Do not, under any circumstances, cite to an
unpublished or depublished opinion (or any unpublished part of a published opinion) . . .
unless . . . one of the narrow exceptions to the noncitation rule applies.'"  (*Williams*, at
p. 1529, italics omitted.)

interest in the Property.  The Torreses further alleged the note and the deed of trust were void and vested no rights or interest in any of Defendants because the wire transfer receipt for the Torreses' loan showed DB Trust Company Americas funded the loan, not American Home Mortgage.  Although their complaint alleged this theory as a basis for each cause of action, the Torreses' opening brief did not rely on this theory as a basis for overturning the trial court's judgment, and thereby forfeited it.

"A ruling by a trial court is presumed correct, and ambiguities are resolved in favor of affirmance.  [Citations.]  The burden of demonstrating error rests on the appellant."  (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631-632.)  Although our review of the trial court's order sustaining the demurer is de novo, that review is limited to issues the Torreses adequately raised and supported in their opening brief.  (*Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625, 630.) "'"When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."'  [Citation.] 'We are not bound to develop appellants' argument for them.  [Citation.]  The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.'"  (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956; see *Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)

In their reply brief, the Torreses made passing reference to their allegations the note and the deed of trust were void for these reasons and they cited Civil Code section 1558 to support that conclusion.  The Torreses, however, forfeited this argument because they (1) waited until the reply brief to raise it (*In re Marriage of Brandes* (2015) 239 Cal.App.4th 1461, 1484, fn. 10; *Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 353), and (2) raised the argument in a perfunctory fashion with no supporting analysis or authority showing Civil Code section 1558 voided the note and the deed of trust (Cal. Rules of Court, rule 8.204(a)(1)(B); *Bullis Charter School v. Los Altos*

13

*School Dist.* (2011) 200 Cal.App.4th 1022, 1032, fn. 4; *People v. Harper* (2000) 82 Cal.App.4th 1413, 1419, fn. 4).

Nonetheless, the Torreses' citation to Civil Code section 1558 does not establish the note and deed of trust were void. That code section provides, "It is essential to the validity of a contract, not only that the parties should exist, but that it should be possible to identify them." (Civ. Code, § 1558.) In applying that section, however, "[t]here is an important distinction . . . between a description of a party that is inherently uncertain and indeterminate and one that is merely imperfect and capable of different applications. The former cannot be corrected, but in the latter case there may be a resort to extraneous facts to ascertain the individuals to whom the description was intended to apply; and a greater or lesser probability of ascertaining such identification does not affect the validity of the instrument." (14 Cal.Jur.3d (2016) Contracts, § 105, p. 320; *Woodward v. McAdam* (1894) 101 Cal. 438, 440 ["'resort to extraneous facts and circumstances may become necessary, in order to ascertain the individual to whom the description was intended to apply; but it is not perceived that the greater or less probability of this should, in either case, affect the validity of the deed'"].)

In their complaint, the Torreses acknowledged they identified four entities registered in New York that had American Home Mortgage in their name and used the same address the note and deed of trust identified as the address for American Home Mortgage. Moreover, the Torreses twice signed security retention agreements acknowledging they executed the note and the deed of trust granting a valid security interest in the Property despite the Torreses' bankruptcy, and AHM Servicing had the right to nonjudicially foreclose on the Property based on the note and deed of trust. (See Evid. Code, § 622 ["The facts recited in a written instrument are conclusively presumed to be true as between the parties thereto, or their successors in interest"].) Thus, the Torreses' allegations and the authority they cited do not support their contention the note and deed of trust are void and unenforceable because they could not

14

identify an entity with the exact same name as the entity identified as the "Lender" in the note and deed of trust. Moreover, the Torreses did not allege they were subjected to competing claims for payment on the loan or that they did not know who to pay.

Similarly, the Torreses cited no authority and provided no argument that establishes the note and the deed of trust were void because the wire transfer receipt for the money used to fund the loan identified an entity other than American Home Mortgage as the "originator." Accordingly, not only did the Torreses forfeit this theory by failing to timely raise it, but the Torreses also failed to show how this theory stated a cause of action against Defendants.

2. The Torreses Lacked Standing to Challenge the Assignment of the Deed of Trust to US Bank

The Torreses also alleged MERS's assignment of the deed of trust to US Bank as the Trust's trustee was void because the assignment occurred more than four years after the Trust closed. The trial court concluded the Torreses lacked standing to contest the assignment because they were not parties to the Trust, and therefore could not enforce its terms. The Torreses contend the trial court erred because they had standing to assert any defect that rendered the assignment void, the Trust was governed by New York law, New York trust law declares void any act by a trustee that contravenes a trust's terms, and US Bank acted in contravention of the Trust's terms by accepting the assignment from MERS after the Trust had closed. The Torreses contention fails because it is based on a misinterpretation of New York law.

Standing is a threshold issue necessary to maintain the existence of a cause of action, and the burden to allege and establish standing lies with the plaintiff. (*Saterbak*, *supra*, 245 Cal.App.4th at pp. 813-814.) The Torreses therefore bore the burden to allege facts showing they had standing to challenge MERS's assignment of the trust deed to US Bank. To do so, they had to allege facts showing they had a "'beneficial

15

interest [in the assignment] that is concrete and actual, and not conjectural or hypothetical.'" (*Ibid*.)

The Supreme Court recently clarified that a borrower suing to set aside or recover damages for a wrongful foreclosure has standing to assert defects in an assignment of the borrower's note and deed of trust to the foreclosing entity when the defects render the assignment void, rather than merely voidable. (*Yvanova*, *supra*, 62 Cal.4th at p. 939.) *Yvanova* explained a void contract has no legal force or effect and never can be ratified or validated by the parties to it, but a voidable contract is one that the contracting parties either may ratify and thereby give legal force and effect, or extinguish at their election. (*Id*. at pp. 929-930.) Consequently, allowing a borrower to challenge an assignment based on a defect that merely renders it voidable would allow the borrower to exercise rights belonging exclusively to the parties to the assignment. The result would be to give the borrower, a nonparty to the assignment, the power to decide whether the assignment should be extinguished rather than ratified. In contrast, allowing a borrower to challenge an assignment based on a defect that renders it void simply allows the borrower to assert the unavoidable legal consequence of the void assignment. A borrower challenging a void assignment is not asserting the rights of the parties to the assignment, but rather his or her own right to have a foreclosure conducted solely at the direction of the current holder of the note and deed of trust. (*Id*. at pp. 935-937.) Because the parties to a void assignment can do nothing to validate it, the borrower is not asserting any rights belonging to those parties when he or she seeks to invalidate the assignment. (*Id*. at p. 936.)

Unfortunately for the Torreses, *Yvanova* does not support their contention they have standing to challenge MERS's assignment to US Bank. The Supreme Court emphasized its decision was a "narrow one" that only applied to borrowers who already have suffered a nonjudicial foreclosure, not to borrowers who seek to prevent a foreclosure from occurring. (*Yvanova*, *supra*, 62 Cal.4th at p. 924 ["We do not hold or

16

suggest that a borrower may attempt to preempt a threatened nonjudicial foreclosure by a suit questioning the foreclosing party's right to proceed"].)

In *Saterbak*, the Court of Appeal concluded *Yvanova* only applies in the postforeclosure context and does not provide a borrower with standing to challenge the assignment of a note and deed of trust before a foreclosure occurs. As *Saterbak* explained, the Legislature established the nonjudicial foreclosure statutory scheme as an inexpensive and efficient means to enforce real property security interests. Allowing a borrower to challenge a foreclosing entity's authority before a foreclosure occurs would impermissibly inject the courts into the nonjudicial foreclosure process by requiring the foreclosing entity to establish its authority in court before the foreclosure may be conducted. Neither the statutory scheme nor the policy behind it supports that result. (*Saterbak*, *supra*, 245 Cal.App.4th at pp. 814-815; see *Kan*, *supra*, 230 Cal.App.4th at p. 743.)

Here, the Torreses impermissibly challenged the assignment before any nonjudicial foreclosure occurred. Indeed, their complaint acknowledged both notices of default Defendants recorded against the Property were rescinded, no foreclosure had occurred, and no foreclosure proceedings were pending against the Property. The Torreses therefore currently lack standing to challenge the assignment regardless of whether the defect they alleged rendered the assignment void or voidable.

Moreover, even if we ignore the timing of their challenge, the Torreses lacked standing to challenge MERS's assignment to US Bank because they failed to allege facts showing the assignment was void rather than merely voidable. The allegation the assignment was void is a legal conclusion that we disregard, and instead we examine the basis for the Torreses' allegation. (*Yvanova*, *supra*, 62 Cal.4th at p. 925.) They asserted the assignment was void because US Bank's acceptance of the assignment after the Trust closed contravened the Trust's terms, and New York law declares void any act by a trustee in contravention of a trust's terms.

17

To support their contention, the Torreses cite New York Estates, Powers and Trusts Law section 7-2.4 (Section 7-2.4) and *Glaski*. Section 7-2.4 states, "If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void." Based on Section 7-2.4 and an unpublished New York trial court decision—*Wells Fargo Bank, N.A. v. Erobobo* (N.Y.Sup.Ct. 2013) 39 Misc.3d 1220(A), [2013 WL 1831799, slip opn. p. 8]—*Glaksi* concluded allegations an assignment occurred after a securitized mortgage investment trust closed sufficed to support an allegation the assignment was void, and thereby defeat a demurrer attacking a borrower's standing to challenge the assignment. (*Glaski*, *supra*, 218 Cal.App.4th at p. 1097.) This aspect of *Glaski*, however, has been criticized as based on a misinterpretation of Section 7-2.4.

Although Section 7-2.4 states a trustee's act contravening the terms of a trust is void, the "weight of New York authority" is that "unauthorized acts by trustees are generally subject to ratification by the trust beneficiaries," and therefore merely are voidable at the beneficiary's election. (*Rajamin v. Deutsche Bank Nat'l Trust Co.* (2nd Cir. 2014) 757 F.3d 79, 88.) Indeed, *Rajamin* expressly rejected *Glaski*'s contrary interpretation of the statute, explaining "we are not aware of any New York appellate decision that has endorsed this interpretation of § 7-2.4." (*Rajamin*, at p. 90.) Moreover, the unpublished trial court opinion *Glaski* cited to support its interpretation of Section 7-2.4 has been reversed. (*Wells Fargo Bank, N.A. v. Erobobo* (N.Y.App.Div. 2015) 127 A.D.3d 1176, 1178.) Based on these authorities, *Saterbak* recently declined to follow this aspect of *Glaski* and "conclude[d] the alleged defects[—the assignment of a deed of trust to a securitized mortgage investment trust after it closed—]merely render the assignment voidable." (*Saterbak*, *supra*, 245 Cal.App.4th at p. 815 & fn. 5.)

We join *Saterbak* in declining to follow this aspect of *Glaski* and conclude the timing of MERS's assignment to US Bank at most rendered the assignment voidable

18

at the election of the Trust's beneficiary.  Consequently, the Torreses lacked standing to challenge the alleged defect in the assignment and cannot state a cause of action based on it.[6]

## IV

### DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.

---

[6]     As noted, the Torreses based all their causes of action on the claim the note, the deed of trust, and the assignment of the deed of trust were void.  Because the Torreses failed to adequately allege facts to support that claim, we need not address the additional reasons for the trial court's conclusion the Torreses failed to allege sufficient facts to state each individual cause of action.